# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ———————————————— | ) | |
| DON'T SHOOT PORTLAND, et al. | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| v. | ) | Case No. 1:20-cv-2040-CRC |
| | ) | |
| CHAD F. WOLF, in his official capacity | ) | |
| as Acting Secretary of Homeland Security, | ) | |
| et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| ———————————————— | ) | |

**BRIEF OF *AMICI CURIAE* CURRENT AND FORMER ELECTED PROSECUTORS, ATTORNEYS GENERAL AND LAW ENFORCEMENT LEADERS, FORMER UNITED STATES ATTORNEYS AND DEPARTMENT OF JUSTICE OFFICIALS IN SUPPORT OF PLAINTIFF DON'T SHOOT PORTLAND, ET AL.**

## TABLE OF CONTENTS

I.   INTEREST AND IDENTITY OF *AMICI CURIAE* .............................................................. 1

II.  SUMMARY OF ARGUMENT ............................................................................................ 2

III. ARGUMENT ..................................................................................................................... 5

    A.   Fortifying Community Trust Is Essential to Promoting Public Safety .............................. 5

    B.   *Local* Law Enforcement Must Guide The Response To Community Unrest Through De-Escalation, Wherever Possible, And By Calling On Years Of Relationship-Building With Their Own Local Community ...................................................................................................... 8

    C.   *Amici* Have a Duty to Protect Their Local Communities, Including Against Federal Authorities ............................................................................................................................ 10

IV.  CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Com. of Ky. v. Long*, 837 F.2d 727 (6th Cir. 1988) ................................................... 11

*In re Neagle,* 135 U.S. 1 (1890) ................................................................................... 11

*Whitehead v. Senkowski,* 943 F.2d 230 (2nd Cir. 1991) ............................................ 11

**Statutes**

28 U.S. Code § 1442 ...................................................................................................... 11


**Other Authorities**

Ainara Tiefenthäler, Evan Hill, Drew Jordan, Malachy Browne and David Botti, *Videos Show How Federal Officers Escalated Violence in Portland*, N.Y. Times (July 24, 2020) ................ 3

Anne Applebaum, *Trump is Putting On a Show in Portland*, The Atlantic (July 23, 2020) ........ 12

Associated Press, *Facing Federal Agents, Portland Protests Find New Momentum*, N.Y. Times (July 21, 2020) ..................................................................................................................... 10

Coleman, Justine, *Trump Says He Will Send Law Enforcement, US Attorneys To Polls In November To Prevent Fraud*, The Hill (August 20, 2020) ......................................................... 4

Conrad Wilson and Jonathan Levinson, *Some federal forces poised to leave Portland, others could remain through election,* OPB (Aug. 7, 2020) ................................................................... 3

Cory Smith, *Police Work With Protesters to Build Trust in Communities of Color*, NBC Dallas-Fort Worth (Nov. 17, 2016) ....................................................................................................... 6

E. Ann Carson, *Prisoners In 2018*, U.S. Dep't of Justice, Bureau of Justice Statistics (Apr. 2020) ................................................................................................................................................... 7

Fair and Just Prosecution, *Building Community Trust: Key Principles and Promising Practices in Community Prosecution and Engagement* (2018) ..................................................................... 6

German Lopez, *Police have to repair community trust to effectively do their job*, Vox (Nov. 14, 2018) ............................................................................................................................................ 6

*Hearing Before the S. Comm. on the Judiciary,* 114th Cong. 2 (2015) (statement of Tom Manger, Chief, Montgomery Cty., Md., Police Dep't & President, Major Cities Chiefs Ass'n) ............. 6

International Association of Chiefs of Police, *National Consensus Policy and Discussion Paper on Use of Force* (Oct. 2017) ...................................................................................................... 8

KGW8, *Trump, Biden trade jabs about Portland, antifa, Proud Boys in first presidential debate* (Sep. 30, 2020) ............................................................................................................................ 4

Kristine Hamann and Rebecca Radar Brown, *Best Practices for Prosecutors: A Nationwide Movement,* 33 No. 5 GPSolo 62 (2016) ................................................................................... 11

Laura Bliss and Sara Holder, *Cities Sue the Trump Administration Over Federal Agents in Portland*, Bloomberg (October 16, 2020) ................................................................................... 3

Laurel Wamsley, *'They Just Started Whaling On Me': Violence In Portland As U.S. Agents Clamp Down*, NPR (July 20, 2020) .............................................................................................. 3

Maggie Koerth and Jamiles Lartey, *De-escalation Keeps Protesters And Police Safer.*
    *Departments Respond With Force Anyway*, FiveThirtyEight (June 1, 2020) ............................ 9

Marissa J. Lang, Josh Dawsey, Devlin Barrett, and Nick Miroff, *Operation Diligent Valor:*
    *Trump showcases federal power in Portland, making a culture war campaign pitch*,
    Washington Post (July 24, 2020) ............................................................................................ 12

Matt Perez, *Homeland Security Secretary Says It May Deploy Federal Troops Into Portland*
    *After Protest Fatality*, Forbes (Aug. 30, 2020) ........................................................................... 4

*Memorandum on Reviewing Funding to State and Local Government Recipients That Are*
    *Permitting Anarchy, Violence, and Destruction in American Cities*, Whitehouse.gov
    (September 2, 2020) ................................................................................................................... 4

Mike Baker, Thomas Fuller and Shane Goldmacher, *Cities in Bind as Turmoil Spreads Far*
    *Beyond Portland*, N.Y. Times (July 26, 2020)........................................................................ 10

Nina Nguyen, *Trump Directs a Campaign Ad in Portland*, Politico (July 25, 2020) .................. 12

President's Task Force on 21st Century Policing, *Final Report of the President's Task Force on*
    *21st Century Policing*, Dep't of Justice, Office of Community Oriented Policing Services
    (May 2015)................................................................................................................................. 7

Rebecca Ellis, *Mayor Ted Wheeler asks federal government to de-deputize Portland police*, OPB
    (Sep. 29, 2020) ......................................................................................................................... 3

Richard Wike and Kathleen Holzwart, *Where Trust is High, Crime and Corruption are Low*,
    Pew Research Center (April 15, 2008)....................................................................................... 6

Ryan W. Miller, *Portland protests: Donald Trump threatens to send federal forces back into the*
    *city; Mayor Ted Wheeler seeks new home,* USA Today (Aug. 30, 2020) .................................. 4

Sarah DeGue, et al., *Deaths Due to Use of Lethal Force by Law Enforcement*, Am. J. of
    Preventive Medicine (Nov. 1, 2016) .......................................................................................... 7

Wendy Sawyer, *Visualizing the racial disparities in mass incarceration,* Prison Policy Initiative
    (July 27, 2020).......................................................................................................................... 7

Zolan Kanno-Youngs, Sergio Olmos, Mike Baker and Adam Goldman, *From the Start, Federal Agents Demanded a Role in Suppressing Anti-Racism Protests*, N.Y. Times (July 28, 2020)... 8

I.    **INTEREST AND IDENTITY OF** *AMICI CURIAE*

*Amici curiae*, current and former elected prosecutors, Attorneys General and law enforcement leaders, as well as former United States Attorneys and Department of Justice Officials, file this brief in support of Plaintiffs' request for relief and in opposition to Defendants' Motion to Dismiss.[1] *Amici* are criminal justice leaders from around the nation who have extensive expertise in law enforcement, prosecution, and cooperative federal-state law enforcement activities. They are intimately familiar with the challenges of performing critical law enforcement and governance functions in communities where citizens harbor a deep distrust of the police and are vulnerable to exploitation and crime. *Amici* serve currently, or have served previously, as public servants in jurisdictions that understand the challenges of protecting local community needs and promoting public safety.

As *amici* know well, community trust and cooperation are essential to public safety. Shattered trust in law enforcement leaves the community vulnerable to harm and exploitation as people fear coming forward to cooperate with investigations and prosecutions, leading to more violence in the communities that *amici* are and have been charged with protecting.

*Amici* believe that the actions of federal law enforcement in Portland, Oregon – as well as similar deployments or threatened federal engagement in other urban areas in the country – undermine these vital law enforcement objectives. The deeply concerning and violent actions of federal agents against peaceful protesters have damaged already-fragile bonds of trust with law enforcement. This type of aggressive and unwelcome federal law enforcement intervention hinders the ability of local law enforcement and local prosecutors to keep their communities safe.

---

[1] No party objects to the filing of this brief. No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amici curiae* made a monetary contribution supporting this brief's preparation or submission.

It impedes elected prosecutors' efforts to fortify trust with the communities they serve, and deprives local law enforcement and justice system leaders of the discretion necessary to determine how best to protect their communities. And in this particularly challenging moment, these actions threaten to exacerbate tensions and create further flash points in places where emotions are already running dangerously high.

For all of these reasons, and as set forth more fully below, *amici* have a compelling interest in this case and are deeply concerned that the deployment and conduct of federal law enforcement in Portland, Oregon – as well as actual or threatened engagement in other urban areas in the country – will undermine and erode public trust and safety. Therefore, we have come together to bring our voices, and our collective decades of experience in the criminal justice arena, to this vital issue.

A full list of *amici* is attached as Exhibit A.

## II.   SUMMARY OF ARGUMENT

Following the tragic death of George Floyd in Minneapolis, members of the Portland community have taken to the streets to express their collective grief, anger, and frustration over not just one senseless act of violence, but the countless other abuses people of color have endured for years. These calls for change are focused on police violence and accountability, as well as the broader need for our nation to grapple with and redress centuries of racism and oppression that have led to mass incarceration, voter suppression, political disempowerment, economic inequality, and educational and health disparities.

The necessary healing process between local law enforcement and the people they serve must occur in communities across the country, including Portland. Yet that process has been thwarted by the recent involvement and disturbing tactics of federal law enforcement officers.

Widespread media coverage of this federal intervention has shown agents gassing, beating, and kidnapping peaceful protesters while wearing no badges or name tags and driving unmarked vehicles.[2] These acts are not only unconstitutional, as Plaintiffs aptly argue, but they also are counterproductive, damage community trust, and threaten public safety in Portland and across the nation. While the federal troops may have temporarily (and in part) retreated from Portland,[3] their continued presence looms over the community. Moreover, the U.S. government "deputized" a number of Portland police officers[4] and that cross-designation of local law enforcement continued even after local City officials withdrew their consent for the deputizing of their local officers.[5] Indeed, as one City official noted:

> Federal deputation is causing concern and confusion among some community members about who is in control of the local police…. For the city to have an effective dialogue with the community about police reform, it has to be clear to the public that local elected officials have the power and authority to determine how local police will operate, without uninvited federal interference.[6]

The looming threat of future and continued federal intervention and interference in Portland perpetuates the harms inflicted on the community this summer. The President and other

---

[2] *E.g.*, Laurel Wamsley, *'They Just Started Whaling On Me': Violence In Portland As U.S. Agents Clamp Down*, NPR (July 20, 2020), https://www.npr.org/sections/live-updates-protests-for-racial-justice/2020/07/20/893082598/they-just-started-whaling-violence-tension-as-u-s-agents-clamp-down-in-portland; Ainara Tiefenthäler, Evan Hill, Drew Jordan, Malachy Browne and David Botti, *Videos Show How Federal Officers Escalated Violence in Portland*, N.Y. Times (July 24, 2020), https://www.nytimes.com/video/us/100000007243995/portland-protests-federal-government.html.

[3] Conrad Wilson and Jonathan Levinson, *Some federal forces poised to leave Portland, others could remain through election,* OPB (Aug. 7, 2020), https://www.opb.org/article/2020/08/07/federal-officers-leave-portland-election/.

[4] Rebecca Ellis, *Mayor Ted Wheeler asks federal government to de-deputize Portland police*, OPB (Sep. 29, 2020), https://www.opb.org/article/2020/09/30/mayor-ted-wheeler-asks-federal-government-to-de-deputize-portland-police/.

[5] Laura Bliss and Sara Holder, *Cities Sue the Trump Administration Over Federal Agents in Portland*, Bloomberg (October 16, 2020), https://www.bloomberg.com/news/articles/2020-10-15/cities-challenge-legality-of-federal-agents-in-cities

[6] Bliss, *id.*

3

federal officials have regularly referenced the need to renew and escalate intervention in the city,[7] and protestors, local officials, and law enforcement agencies alike know that federal troops may reenter Portland at any moment the Administration opts to engage in a further show of force. The harmful and abusive tactics utilized in Portland, therefore, continue to cast a cloud over the community and those within it seeking to exercise their First Amendment rights.

In other words, Plaintiffs' claims are not merely speculative. As outlined in depth in Plaintiffs' filings, Defendants' past actions, statements about planned future actions, additional federal deployments across the nation, and the ongoing presence of federal law enforcement in Portland and other cities, raise serious concerns that directly impact the fundamental constitutional rights of individuals in the many communities *amici* are, or have been, charged with protecting. The claims set forth by Plaintiffs are concrete and will do lasting damage to our nation's system of justice if Defendants' actions are not curtailed.

---

[7] Ryan W. Miller, *Portland protests: Donald Trump threatens to send federal forces back into the city; Mayor Ted Wheeler seeks new home,* USA Today (Aug. 30, 2020), https://www.usatoday.com/story/news/nation/2020/09/01/portland-protests-donald-trump-defends-caravan-kate-brown-plan/3453868001/; KGW8, *Trump, Biden trade jabs about Portland, antifa, Proud Boys in first presidential debate* (Sep. 30, 2020), https://www.kgw.com/article/news/local/protests/portland-protests-antifa-proud-boys-president-debate-trump-biden/283-22fe041b-dde6-45c6-8209-ca2952515bc9; Matt Perez, *Homeland Security Secretary Says It May Deploy Federal Troops Into Portland After Protest Fatality*, Forbes (Aug. 30, 2020), https://www.forbes.com/sites/mattperez/2020/08/30/homeland-security-secretary-says-it-may-deploy-federal-troops-into-portland-after-protest-fatality/#59595a0e46b8. These threats of federal engagement have not been limited to addressing unrest or protecting federal property. The President recently announced plans to send law enforcement to polling places on election day and also issued a memorandum directing review of federal funding for "anarchist" cities, including Portland. *See*, Coleman, Justine, *Trump Says He Will Send Law Enforcement, US Attorneys To Polls In November To Prevent Fraud*, The Hill (August 20, 2020), https://thehill.com/homenews/administration/513048-trump-says-he-will-send-law-enforcement-us-attorneys-to-polls-in, and *see also, Memorandum on Reviewing Funding to State and Local Government Recipients That Are Permitting Anarchy, Violence, and Destruction in American Cities*, Whitehouse.gov (Sep. 2, 2020), https://www.whitehouse.gov/presidential-actions/memorandum-reviewing-funding-state-local-government-recipients-permitting-anarchy-violence-destruction-american-cities/.

As a nation, we are facing a critical moment in our history. Millions in our country have taken to the streets demanding a reset of our justice system. They are seeking meaningful action to acknowledge, address, and mitigate long-standing racial inequities. And they are demanding police accountability. Our neighbors, colleagues and fellow Americans are crying out, asking us to hear them, understand them, help them heal past wounds, and find a way to move forward together. If those charged with keeping communities safe and protecting the rule of law ignore these heartfelt concerns, the resulting inaction will have a devastating impact on the integrity and credibility of our justice system. And, even worse, fanning the flames of distrust by responding with a *show of force* – rather than with understanding, dialogue, and de-escalation – will do lasting damage to the entire justice system. It will inhibit the ability of well-intentioned public servants and criminal justice leaders such as *amici* to fulfill their duty to keep communities safe.

The eyes of the nation are watching how these events play out. *Amici* have devoted our careers to serving our communities and we are submitting this *amicus* brief because we believe that these issues are far too important to stand silent. We know that working *with* communities and treating them with respect is integral to carrying out the mission of promoting safe, strong and healthy communities. We have also seen the damage done when law enforcement responds to those seeking to be heard with sheer force – rather than de-escalation tactics. We must respect and honor the community's right to co-own and co-create public safety.

## III.   ARGUMENT

### A.  Fortifying Community Trust Is Essential to Promoting Public Safety

Public safety is inextricably tied to public trust, which in turn is rooted in perceptions of justice and fairness. Community trust requires that people view the criminal justice system and its actors as legitimate. And as the nationwide protests against systemic racism and police

brutality amply demonstrate, law enforcement's legitimacy is dependent on valuing the dignity of all human life and a commitment to fair, equitable, and accountable policing.

To combat crime, police officers "need the full cooperation of victims and witnesses."[8] Police must interact with their communities in a manner that builds trust and encourages cooperation, beginning by listening openly and honestly to the public they serve. Similarly, prosecutors depend upon public trust to realize their mission of upholding justice and promoting public safety for all members of the community. Indeed, "trust between the community and the prosecutor's office is essential to maintain the office's legitimacy and credibility."[9] Prosecutors who engage with their communities see enhanced public confidence in the criminal justice system, which in turn makes the public "more likely to report crimes and to cooperate as witnesses."[10]

In contrast, when the public does not trust law enforcement and prosecutors, victims of crime may be less willing to come forward, report crimes, or testify in court.[11] This reluctance hampers the ability of the police and prosecutors to seek justice and promote public safety.

Decades of police brutality and racially disparate outcomes within the criminal justice system have eroded public trust in law enforcement, especially in Black communities and other communities of color. Racial disparities are deeply entrenched in our justice system. Black

---

[8] *Hearing Before the S. Comm. on the Judiciary,* 114th Cong. 2 (2015) (statement of Tom Manger, Chief, Montgomery Cty., Md., Police Dep't & President, Major Cities Chiefs Ass'n), https://perma.cc/SKM2-QKV9.

[9] Fair and Just Prosecution, *Building Community Trust: Key Principles and Promising Practices in Community Prosecution and Engagement* (2018), https://fairandjustprosecution.org/wp-content/uploads/2018/03/FJP_Brief_CommunityProsecution.pdf.

[10] *Id*; *see generally* Cory Smith, *Police Work With Protesters to Build Trust in Communities of Color*, NBC Dallas-Fort Worth (Nov. 17, 2016), https://bit.ly/3hOXVDn; Richard Wike and Kathleen Holzwart, *Where Trust is High, Crime and Corruption are Low*, Pew Research Center (Apr. 15, 2008), https://pewrsr.ch/3360gpm.

[11] *See generally* German Lopez, *Police have to repair community trust to effectively do their job*, Vox (Nov. 14, 2018), https://bit.ly/3jR1xGF.

people are more likely than white people to be stopped by police, searched, arrested, and sent to jail or prison.[12] Specifically, Black and Latino adults are approximately 5.6 and 2.5 times as likely to be incarcerated as white adults, respectively.[13] Black individuals are at least 2.8 times more likely to be killed by the police than their white counterparts.[14] In sum, for "too many poor citizens and people of color, arrest and imprisonment have become an inevitable and seemingly unavoidable part of the American experience."[15]

Sadly, the police killings of George Floyd, Breonna Taylor, Rayshard Brooks, Daniel Prude, and Dijon Kizzee are only the most recent examples of the systemic racism inherent in our criminal justice system. Their deaths, and the inequities that are rampant throughout each stage of the nation's criminal legal system, lay bare the long-standing institutionalized racism woven into the fabric of our justice system. To move forward, law enforcement must *earn* the public's trust by pairing their words with a meaningful commitment to learn from, and partner with, the communities they serve.[16]

---

[12] *See* Wendy Sawyer, *Visualizing the racial disparities in mass incarceration,* Prison Policy Initiative (July 27, 2020), https://www.prisonpolicy.org/blog/2020/07/27/disparities/.

[13] E. Ann Carson, *Prisoners In 2018*, U.S. Dep't of Justice, Bureau of Justice Statistics (Apr. 2020), https://www.bjs.gov/content/pub/pdf/p18.pdf.

[14] Sarah DeGue, et al., *Deaths Due to Use of Lethal Force by Law Enforcement*, Am. J. of Preventive Medicine (Nov. 1, 2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6080222/.

[15] President's Task Force on 21st Century Policing, *Final Report of the President's Task Force on 21st Century Policing*, Dep't of Justice, Office of Community Oriented Policing Services (May 2015), https://cops.usdoj.gov/pdf/taskforce/taskforce_finalreport.pdf at 9 (quoting Bryan Stevenson, *Confronting Mass Imprisonment and Restoring Fairness to Collateral Review of Criminal Cases*, 41 Harvard Civ. Rts.-Civ. Liberties L. Rev. 339 (2006)).

[16] See, e.g., *id*. at 10 ("Research demonstrates that these principles lead to relationships in which the community trusts that officers are honest, unbiased, benevolent, and lawful. The community therefore feels obligated to follow the law and the dictates of legal authorities and is more willing to cooperate with and engage those authorities because it believes that it shares a common set of interests and values with the police.") (citing Tom Tyler, et al., *Procedural Justice and Cooperation*, Encyclopedia of Criminology & Crim. Just., 4011 (2014)).

"[L]aw enforcement cannot build community trust if it is seen as an occupying force coming in from outside to impose control on the community."[17] Yet that is exactly what federal agents have done – and these force-first interventions, undertaken by law enforcement entities that seem to have little interest in communicating with or understanding the motivations and concerns of these jurisdictions and those who reside there,[18] will only serve to deepen the divide in the already fragile relationships between local law enforcement and the communities they serve.

B. *Local* **Law Enforcement Must Guide The Response To Community Unrest Through De-Escalation, Wherever Possible, And By Calling On Years Of Relationship-Building With Their Own Local Community**

When police encounter protestors who are angry and frustrated, every effort should be made to "stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary."[19] There are a wide range of techniques to diffuse situations and reduce the use of force or violence. Some of these include speaking calmly, positioning oneself in a non-threatening manner, establishing a rapport, issuing warnings, and moving locations to lessen the level of confrontation or danger.[20] All of these responses are predicated on

---

[17] President's Task Force on 21st Century Policing, *supra* note 15 at 1.
[18] *See* Zolan Kanno-Youngs, Sergio Olmos, Mike Baker and Adam Goldman, *From the Start, Federal Agents Demanded a Role in Suppressing Anti-Racism Protests*, N.Y. Times (July 28, 2020), https://www.nytimes.com/2020/07/28/us/federal-agents-portland-seattle-protests.html.
[19] International Association of Chiefs of Police, *National Consensus Policy and Discussion Paper on Use of Force* (Oct. 2017), https://www.theiacp.org/sites/default/files/all/n-o/National_Consensus_Policy_On_Use_Of_Force.pdf.
[20] *Id.*

the well-settled value of de-escalation as the preferred response in situations where emotions are running high.

On the other hand, extensive research into interactions between protestors and the police reveals that, "when the police respond by escalating force – wearing riot gear from the start, or using tear gas on protesters – it doesn't work. In fact, disproportionate police force is one of the things that can make a peaceful protest not so peaceful."[21] Unidentified federal officers coming into local jurisdictions with a show of force – and indeed without being solicited by the jurisdiction's elected leaders – necessarily exacerbates tensions, rather than de-escalating them.

Also problematic are the repeated images reflecting federal forces deployed to Portland – some of whom were members of paramilitary units of the U.S. Border Patrol  – wearing military-type uniforms and armaments, operating pursuant to undefined policies with virtually non-existent supervision, and having little or no training on how to manage civilian crowds. Given this starting point, it is not surprising that these federal officers resorted to excessive and unconstitutional use of force in an effort to control the situation. Further, it should be noted that insufficiently trained and uncontrolled law enforcement personnel are a danger not simply to members of the community, but also to their fellow officers.

Equally concerning, these unidentified federal agents have been engaging in practices that enable them to evade accountability for their misdeeds and abuses. While local police departments and prosecutors can and must take meaningful steps to ensure that officer misconduct and excessive force in their own communities are addressed, they can do very little with respect to federal agents in their jurisdictions who appear to be intentionally seeking to

---

[21] Maggie Koerth and Jamiles Lartey, *De-escalation Keeps Protesters And Police Safer. Departments Respond With Force Anyway*, FiveThirtyEight (June 1, 2020), https://fivethirtyeight.com/features/de-escalation-keeps-protesters-and-police-safer-heres-why-departments-respond-with-force-anyway/.

avoid identification. It is unclear who is commanding and overseeing these agents and they are, in all the ways that matter to accountability, a foreign presence difficult for local officials to control.

The disturbing consequences of this scenario have been playing out in Portland,[22] and across the country,[23] where protests have surged, rather than dissipated, in response to these federal troops and tactics. The presence of federal agents only exacerbates anger, resentment, and tensions at a moment when a return to calm is what is needed most.

It is not only the disturbing actions of these federal troops that undermine public safety. As an outside entity with no connection to the community, these federal agents are incapable of facilitating or promoting the healing process. Local law enforcement must reckon with racial injustice and police violence in their own communities – and be accountable for it. Local leaders, like *amici*, have established relationships with the communities they serve, based on shared history, knowledge, and understanding, and they interact with members of their communities every single day. The lack of any understanding of local dynamics and community relationships renders federal law enforcement ill-equipped to play any meaningful role in this healing process.

## C.  *Amici* Have a Duty to Protect Their Local Communities, Including Against Federal Authorities

*Amici* have a vital interest in this case because it implicates their duties as criminal justice leaders, past and present, to protect members of their communities from harm, assault and infringement of their rights by any and all perpetrators, including federal agents. Protecting the

---

[22] Associated Press, *Facing Federal Agents, Portland Protests Find New Momentum*, N.Y. Times (July 21, 2020), https://www.nytimes.com/aponline/2020/07/21/us/ap-us-racial-injustice-portland.html?searchResultPosition=15.

[23] Mike Baker, Thomas Fuller and Shane Goldmacher, *Cities in Bind as Turmoil Spreads Far Beyond Portland*, N.Y. Times (July 26, 2020), https://www.nytimes.com/2020/07/26/us/protests-portland-seattle-trump.html?searchResultPosition=17.

community and stepping in when individuals are victimized and the rule of law is undermined is the essence of what prosecutors are expected and elected to do. "A prosecutor's core mission is and has always been to promote justice and to protect the community by ensuring public safety."[24] *Amici* prosecutors would be derelict in our duties if we did not speak out and take action when federal agents pose a clear threat to the safety of our communities.

While local prosecutors' ability to pursue charges against federal officials may be limited by 28 U.S. Code § 1442, they are not powerless to act and, indeed, have a responsibility to criminally prosecute federal law enforcement agents where the evidence shows that these actors engaged in activities that harmed residents *amici* are sworn to protect – whether that harm is in the form of excessive use of force, illegal detention or arrest, or other violations of rights. *See In re Neagle,* 135 U.S. 1 (1890) (recognizing a state criminal prosecution against a federal official could proceed if the official *cannot* show that they were "authorized to [act in that manner] ... by the law of the United States" and did "no more than what was necessary and proper to do so"); *Whitehead v. Senkowski,* 943 F.2d 230 (2d Cir. 1991) (courts must walk "the fine line" between federal immunity and the "obligation to avoid granting a license to federal officials to flout state laws with impunity"). After all, "the Supremacy Clause was not intended to be a shield for 'anything goes' conduct by federal law enforcement officers." *Com. of Ky. v. Long*, 837 F.2d 727, 746 (6th Cir. 1988).

State prosecutions of federal officials are rare, likely in part because they are so resource intensive. Where, as here, federal agents have shielded themselves from identification,

---

[24] *See* Kristine Hamann and Rebecca Radar Brown, *Best Practices for Prosecutors: A Nationwide Movement,* 33 No. 5 GPSolo 62 (2016), https://pceinc.org/wp-content/uploads/2019/11/2016September-Best-Practices-for-Prosecutors-A-Nationwide-Movement-GP-Solo-ABA-Journal.pdf.

investigation, and prosecution, it is even more challenging to ensure that they are brought to justice. And pursuing accountability for these offenses, especially with these added challenges, will divert resources away from addressing local crimes.

For all of these reasons, *amici* feel compelled to bring their voices to this case. If these tactics are permitted to continue unaddressed, they will not simply prevent leaders such as *amici* from protecting their communities, but will also undermine the integrity of a system of justice that exists to keep us all safe from misconduct, use of force, violations of rights we hold dear, and abuse – whether by law enforcement or anyone else.

## IV.   CONCLUSION

The deployment of aggressive and militarized federal troops to stifle protests – and in particular, federal troops without identification, in unmarked vehicles, and using techniques better suited for a war zone – is of great concern to *amici,* and the last thing our communities need in this time of turmoil and upset. Those who have ordered these federal deployments have no apparent regard for *what actually works* and are acting with little concern for the actual safety of the communities they occupy. Instead, the spectacle of forcible conflict, through which the humanity of protestors and the legitimacy of their pain and upset is denied and silenced through a show of force, appears to be an end in itself.[25]

As *amici*, we reject this starting point. We have been and are committed to protecting our communities, and we do not take that responsibility lightly. To do so, however, we need to be

---

[25] *See generally* Anne Applebaum, *Trump is Putting On a Show in Portland*, The Atlantic (July 23, 2020), https://bit.ly/2X84FUO; Marissa J. Lang, Josh Dawsey, Devlin Barrett, and Nick Miroff, *Operation Diligent Valor: Trump showcases federal power in Portland, making a culture war campaign pitch*, Washington Post (July 24, 2020), https://wapo.st/2EoEDGq; Nina Nguyen, *Trump Directs a Campaign Ad in Portland*, Politico (July 25, 2020), https://politi.co/39Co05P.

able to heal divisions between local law enforcement and our aggrieved residents without the federal government undermining or directly combatting our efforts.

For all of these reasons, we respectfully request that this Court order an end to these deeply concerning tactics and allow our communities to begin to heal by granting Plaintiffs' requested relief and denying the Defendants' Motion to Dismiss.

Dated:  October 29, 2020                              Respectfully submitted,

                                                     */s/ Loren Kieve*

                                                     Loren Kieve (D.C. Bar No. 196436)

                                                     KIEVE LAW OFFICES

                                                     2655 Steiner Street
                                                     San Francisco, California 94115
                                                     (415) 364-0060
                                                     lk@kievelaw.com

                                                     *Counsel for Amici Curiae*

13

# EXHIBIT A

## List of *Amici*

**Chiraag Bains**
Former Trial Attorney, Criminal Section, Civil Rights Division, U.S. Department of Justice
Former Senior Counsel to the Assistant Attorney General, Civil Rights Division, U.S. Department of Justice

**Paul Bardacke**
Former Attorney General, New Mexico

**Diana Becton**
District Attorney, Contra Costa County, California

**Wesley Bell**
Prosecuting Attorney, St. Louis County, Missouri

**Buta Biberaj**
Commonwealth's Attorney, Loudoun County, Virginia

**Sherry Boston**
District Attorney, DeKalb County, Georgia

**Chesa Boudin**
District Attorney, City and County of San Francisco, California

**Joseph Brann**
Former Chief, Hayward Police Department, California
Former Director, Office of Community Oriented Policing Services, U.S. Department of Justice

**Aisha Braveboy**
State's Attorney, Prince George's County, Maryland

**Kenyen Brown**
Former U.S. Attorney, Southern District of Alabama

**Jim Bueermann**
Former Chief, Redlands Police Department, California

**John Choi**
County Attorney, Ramsey County, Minnesota

**Jerry L. Clayton**
Sheriff, Washtenaw County, Michigan

**Dave Clegg**
District Attorney, Ulster County, New York

**Shameca Collins**
District Attorney, 6th Judicial District, Mississippi

**Scott Colom**
District Attorney, 16th Judicial District, Mississippi

**Brendan Cox**
Former Chief, Albany Police Department, New York
Director of Policing Strategies, LEAD National Support Bureau

**John Creuzot**
District Attorney, Dallas County, Texas

**Ronald L. Davis**
Former Director, Office of Community Oriented Policing Services, U.S. Department of Justice
Former Chief, East Palo Alto Police Department, California
Former Chief, Oakland Police Department, California

**Satana Deberry**
District Attorney, Durham County, North Carolina

**Parisa Dehghani-Tafti**
Commonwealth's Attorney, Arlington County and the City of Falls Church, Virginia

**Brandon del Pozo**
Former Chief, Burlington Police Department, Vermont

**Drew Diamond**
Former Chief, Tulsa Police Department, Oklahoma

**Thomas J. Donovan, Jr.**
Attorney General, Vermont

**Michael Dougherty**
District Attorney, 20th Judicial District, Colorado

**Mark Dupree**
District Attorney, Wyandotte County, Kansas

**Keith Ellison**
Attorney General, Minnesota

**Robert W. Ferguson**
Attorney General, Washington

**Kimberly M. Foxx**
State's Attorney, Cook County, Illinois

**Brian E. Frosh**
Attorney General, Maryland

**Douglas Gansler**
Former Attorney General, Maryland
Former State's Attorney, Montgomery County, Maryland

**Gil Garcetti**
Former District Attorney, Los Angeles County, California

**Kimberly Gardner**
Circuit Attorney, City of St. Louis, Missouri

**Sarah F. George**
State's Attorney, Chittenden County, Vermont

**Joe Gonzales**
District Attorney, Bexar County, Texas

**Eric Gonzalez**
District Attorney, Kings County, New York

**Mark Gonzalez**
District Attorney, Nueces County, Texas

**Andrea Harrington**
District Attorney, Berkshire County, Massachusetts

**Scott Harshbarger**
Former Attorney General, Massachusetts

**Jim Hingeley**
Commonwealth's Attorney, Albemarle County, Virginia

**John Hummel**
District Attorney, Deschutes County, Oregon

**Susan Hutson**
Former Chief Prosecutor, City of Corpus Christi, Texas
President, National Association for Civilian Oversight of Law Enforcement

**Natasha Irving**
District Attorney, 6th Prosecutorial District, Maine

**Michael Jackson**
District Attorney, Dallas County, Alabama

**Kathleen Jennings**
Attorney General, Delaware

**Justin F. Kollar**
Prosecuting Attorney, Kauai County, Hawaii

**Lawrence S. Krasner**
District Attorney, Philadelphia, Pennsylvania

**Miriam Aroni Krinsky**
Former Assistant U.S. Attorney, Criminal Appellate Chief, and General Crimes Chief, Central District of California
Former Chair, Solicitor General's Criminal Appellate Advisory Group

**William Lansdowne**
Former Chief, San Diego Police Department, California
Former Chief, San Jose Police Department, California
Former Chief, Richmond Police Department, California

**Patricia Madrid**
Former Attorney General, New Mexico

**Garry McFadden**
Sheriff, Mecklenburg County, North Carolina

**Brian Middleton**
District Attorney, Fort Bend County, Texas

**Stephanie Morales**
Commonwealth's Attorney, Portsmouth, Virginia

**Marilyn J. Mosby**
State's Attorney, Baltimore City, Maryland

**Jerome O'Neill**
Former Acting U.S. Attorney, District of Vermont

**Jody Owens**
District Attorney, Hinds County, Mississippi

**Jim Petro**
Former Attorney General, Ohio

**Channing Phillips**
Former U.S. Attorney, District of Columbia
Former Counsel to the Attorney General, U.S. Department of Justice

**Bryan Porter**
Commonwealth's Attorney, City of Alexandria, Virginia

**Abdul Pridgen**
Chief, Seaside Police Department, California

**Karl A. Racine**
Attorney General, District of Columbia

**Kwame Raoul**
Attorney General, Illinois

**Ira Reiner**
Former District Attorney, Los Angeles County, California
Former City Attorney, Los Angeles, California

**Rachael Rollins**
District Attorney, Suffolk County, Massachusetts

**Ellen Rosenblum**
Attorney General, Oregon

**Stephen Rosenthal**
Former Attorney General, Virginia

**Marian T. Ryan**
District Attorney, Middlesex County, Massachusetts

**Dan Satterberg**
Prosecuting Attorney, King County, Washington

**Mike Schmidt**
District Attorney, Multnomah County, Oregon

**Ronal Serpas**
Former Superintendent, New Orleans Police Department, Louisiana
Former Chief, Metropolitan Nashville Police Department, Tennessee
Former Chief, Washington State Patrol

**Daniella Shorter**
District Attorney, 22nd Judicial District, Mississippi

**Carol A. Siemon**
Prosecuting Attorney, Ingham County, Michigan

**Norm Stamper**
Former Chief, Seattle Police Department, Washington

**David E. Sullivan**
District Attorney, Northwestern District, Massachusetts

**Shannon Taylor**
Commonwealth's Attorney, Henrico County, Virginia

**Raúl Torrez**
District Attorney, Bernalillo County, New Mexico

**Gregory Underwood**
Commonwealth's Attorney, City of Norfolk, Virginia

**Matthew Van Houten**
District Attorney, Tompkins County, New York

**Andrew Warren**
District Attorney, 13th Judicial Circuit, Florida

**Lynneice Washington**
District Attorney, Jefferson County, Bessemer Division, Alabama